UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BOBBY LEE CALHOUN, JR.,

    Defendant.
_____/

Case No. 18-20820

HON. GEORGE CARAM STEEH

OPINION AND ORDER DENYING DEFENDANT'S
AMENDED MOTION TO SUPPRESS EVIDENCE [DOC. 19]

This matter is before the court on defendant Bobby Lee Calhoun, Jr.'s motion to suppress evidence discovered and seized during the search of two residences pursuant to two search warrants issued in this case. Defendant separately moves to suppress firearms found in the shed at one of the residences as obtained in violation of the Fourth Amendment's particularity requirement.

The court heard oral argument on defendant's challenge to the sufficiency of the affidavits on July 17, 2019. For the reasons stated in this opinion and order, defendant's motion to suppress is DENIED.

On December 1, 2018, DEA Special Agent Stacy Zirkle submitted two search warrant applications and affidavits for "bulk currency, documents,

drug and other items indicative of drug trafficking [including illegal firearms and weapons] stored and maintained at" two residences belonging to defendant. Judge Alexis Krot of the 31st District Court in Wayne County Michigan issued two search warrants based on the applications and affidavits, one for the "Sanford Street residence" in Pontiac, Michigan and one for the "Cornerstone Village residence" in Southfield, Michigan. Defendant challenges the sufficiency of the affidavits supporting the search warrants. The following facts are taken from the affidavits.

In November 2018, DEA and other law enforcement received information from a source of information ("SOI") who identified the defendant and his wife as kilogram distributors of narcotics throughout the Detroit area. (Zirkle Aff. ¶ 2). The SOI disclosed that defendant and his wife live in Southfield, Michigan; that defendant drives a black Ford F-250 and an SUV; that defendant utilizes a house in Pontiac, which he calls the "Dog House," to hold narcotics for sale; and that defendant and his wife use the U.S. mail to send and receive money and narcotics. ¶ 2.

SA Zirkle described law enforcement efforts to corroborate the information received from the SOI. Agents reviewed law enforcement indices and discovered several addresses for defendant and his wife in Pontiac and Southfield, including the two target locations. ¶ 3. The SOI

identified a photo of the Sanford Street residence as "The Dog House."  *Id*.

Agents confirmed that a 2008 Ford F-250 and a 2017 Kia Sorrento were registered to defendant at the Sanford Street address.  *Id*.

After confirming the information about the locations and vehicles, agents surveilled the two target residences.  On November 14, 2018, agents drove by the Cornerstone Village residence and saw the Ford F-250 parked in front of the garage.  ¶ 4.  On November 15, 2018, agents drove by the Sanford Street residence and observed that the Kia Sorrento was parked in the driveway of the residence.  ¶ 5.  Agents also observed defendant walking quickly from the house to the sidewalk where he looked up and down the street.  The agents considered this activity to be significant because they were aware that a package from the United States Postal Service was scheduled to arrive that day and they believed defendant was looking for a mail truck.  *Id*.

On November 17, 2018, agents intercepted a package that was sent from Tucson, Arizona to the Sanford Street residence.  A K9 sniff gave a positive indication that narcotics were present in the package.  ¶ 7.  On November 19, 2018, Magistrate Judge Majzoub authorized a search warrant for the package.  The package contained .555 kilograms of cocaine.  ¶ 8.

On November 27, 2018, agents surveilled the Cornerstone Village residence and observed the Kia Sorrento parked in front of the residence. ¶ 9. Thus, the Kia Sorrento was seen at both target locations.

On November 30, 2018, Agent Zirkle "received information from a Source of Information, who has been deemed credible and reliable and whose information has led to a seizure of 500 grams of cocaine destined for CALHOUN at [the Sanford Street residence]." ¶ 11. The SOI said he observed a live video chat of bulk currency being stored in trash bags and suitcases at the Cornerstone Village residence. *Id.* The callers on the live chat, identified by the SOI as defendant's twin sons, identified the currency as drug proceeds from the sale of narcotics by defendant. *Id.* According to the SOI, the callers stated they planned to rob defendant for the money the next morning and might have to kill defendant in the process. The SOI was aware defendant's sons had stolen guns from defendant previously. *Id.* The SOI stated the stolen guns were not reported because defendant is a convicted felon. *Id.* The SOI stated that only two of the three stolen firearms were recovered. *Id.* The SOI was also aware that defendant stored weapons at the Cornerstone Village residence and the Sanford Street residence. *Id.*

Special Agent Zirkle included general information that she knew

about drug traffickers from her training and experience, including the fact that drug traffickers often store drugs and drug proceeds at different locations to thwart law enforcement efforts from seizing both drugs and drug proceeds. Zirkle also stated she is aware drug traffickers will travel to their stash locations with short stays to pick up drugs and deliver drugs to customers in the immediate vicinity. ¶ 13.

Defendant makes three challenges to the search warrant affidavits. First, the SOI did not provide any information of illegal activity witnessed by him first-hand. Second, the only information provided by the SOI that was independently verified by the government was publicly available information – homes and cars owned by the defendant. Third, the claim in the affidavit that the SOI's "information led to a seizure of 500 grams of cocaine destined for CALHOUN at [the Sanford Street residence]," is misleading at best. The package was not addressed to "Calhoun" but to "Robert Gonzalez" at the Sanford Street residence, and no one named Robert Gonzalez was known to be connected with the Sanford Street residence. These facts were omitted from the affidavit.

I. Probable Cause

To evaluate probable cause, courts are instructed "simply to make a practical, common-sense decision whether, given all the circumstances set

forth in the affidavit before [it] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The facts and circumstances taken as a whole must give the magistrate probable cause to believe the items sought will be found during the search. *See, id., Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978). "[T]he affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 801 F.3d 679, 686 (6th Cir. 2015). "Reviewing courts are to accord the magistrate's [probable cause] determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (internal quotations and citations omitted).

  A. <u>SOI's Credibility</u>

  An affidavit must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable. *Aguilar v. Texas*, 378 U.S. 108, 114 (1964). The purpose of this requirement is to assist the magistrate in assessing the informant's "basis of knowledge" to determine his credibility or reliability. *Gates*, 462 U.S. at 230. To satisfy this requirement, "[t]he affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest 'with some detail' that the informant provided reliable

information in the past." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (citing *Allen*, 211 F.3d at 976).

In this case, the agent made a statement as to reliability and credibility of the SOI and also independently corroborated much of the information provided by the SOI.

    1. <u>SOI Provided Reliable Information in the Past</u>

S.A. Zirkle attested that she received information from a SOI who has been deemed credible and reliable because past information led to the seizure of cocaine destined for defendant at one of the target locations. However, Zirkle omitted disclosing to the magistrate that the package containing the cocaine was addressed to a "Robert Gonzalez" at the Sanford Street residence, and not to defendant, his wife, or anyone else identified as associated with defendant or the target residence. Therefore, defendant argues that the cocaine the government found in the package merely provides after-the-fact corroboration of the SOI's allegations of illegal activity.

From the information provided in the affidavit, the magistrate knew that the SOI provided information that defendant was a narcotics dealer, that he operated out of two residences, and that the Sanford Street residence in particular was used as a drug house. The information that the

SOI provided that led to the seizure of cocaine was relevant in that it identified the address on the package as the Sanford Street residence. While it was misleading for the agent to state that the cocaine was destined for Calhoun, even if that statement was corrected, the fact remains that the drugs were destined for the Sanford Street residence. That is, if the affidavit had included the fact that the package was addressed to Robert Gonzalez at the Sanford Street residence, it would not impact the probable cause determination because the package was addressed to the location identified by the SOI as a drug stash house. *See United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (a defendant is only entitled to a *Franks* hearing on the basis of an allegedly material omission upon making a substantial preliminary showing that the affiant engaged in deliberate falsehood in omitting the information and that a finding of probable cause would not be supported by the affidavit if the omitted material was considered). Additionally, given the street value of 500 grams of cocaine, it is unlikely that the address on the package was incorrect. More likely, a false name was used so as not to associate defendant with the package in case it was intercepted by law enforcement.

Defendant next proposes various hypotheticals that, if included in the affidavits, would have better supported a conclusion that the SOI was

reliable. For example, if the SOI had told the agent that defendant received narcotics addressed to other names in order to avoid being caught. Or, the agent could have executed a controlled delivery to see if anyone at the Sanford address would have accepted the package addressed to Robert Gonzalez. While this information may have bolstered a credibility finding, the court finds that there is enough information included in the affidavit for the magistrate to conclude that the SOI was credible. The fact that the agent corroborated many of the SOI's allegations, as discussed below, adds to the conclusion that the SOI was a reliable source.

    2. <u>Corroboration</u>

The government is correct that "independent police investigation that corroborates the tipster's allegations can make up" for the lack of information about the tipster. *United States v. Hoang*, 487 F.Appx. 239, 241 (6th Cir. 2012) (unpublished). In this case, agents confirmed the two addresses and two vehicles identified by the SOI as being associated with defendant and his wife. The agents also observed defendant, his wife and his vehicles at both addresses over a period of a couple weeks.

The SOI stated that the Sanford Street residence was called "The Dog House" and was known as a place where defendant held narcotics for sale. Zirkle attested that "Dog House" was a reference to a narcotics stash

house because her training and experience taught her that heroin is referred to as "Dog" or "Dog Food."

Agents reported observing defendant on the sidewalk looking up and down the street in front of the residence on November 15. Because agents were aware a package containing cocaine was scheduled for delivery at the address that day, they believed defendant was looking down the street for a mail truck. Based on the information provided by the SOI and corroborated by the agents, this belief is more than mere speculation. At oral argument, defendant referred to an affidavit in support of another search warrant sought in this case, which stated that agents were aware that the package at issue was in Baltimore, Maryland on November 15. ECF No. 23-2, PageId 270. This information, which purportedly came from the post office tracking website, does not undermine the agent's corroboration of information provided by the SOI. The package still could have been delivered as expected on November 15 despite being in Baltimore earlier in the day.

The court next turns to the information provided by the SOI about observing a live video chat showing bulk currency being stored in trash bags and suitcases at the Cornerstone Village residence. The SOI stated that the caller identified the currency as drug proceeds from the sale of

narcotics by defendant. Defendant argues that the information provided by the SOI fails to contain a detailed description of the alleged wrongdoing, along with a statement that the event was observed firsthand, and also fails to state that the police corroborated the tip with independent investigatory work. Defendant's reliance on *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993) is misplaced. The *Leake* Court stressed "the importance of taking sufficient time to verify an anonymous tip before the warrant is requested." *Id.* at 1365. This case involves a SOI who already provided corroborated information to the agents in this case, not an anonymous tipster.

Overall, there is sufficient information in the affidavit from which a magistrate could assess the SOI's "basis of knowledge" to determine his credibility.

B. <u>Probable Cause in This Case</u>

As it relates to probable cause, the issue is the nexus between the evidence of criminal activity and the address for which the search warrant is sought. Agent Zirkle asserts that defendant was under investigation for a multi-kilogram drug operation involving two locations. The Sanford residence was known as the Dog House and was used to store the drugs and the Cornerstone location was used as a residence by defendant.

Zirkle received information that defendant used the U.S. mail to transport drugs and money. Surveillance revealed that defendant often moved between the two locations. During the course of the investigation Zirkle intercepted a package containing over 500 grams of cocaine that was addressed to the Sanford residence. Zirkle then received information from the SOI that defendant was storing large amounts of drug proceeds at the Cornerstone residence. She was also told of a plan to rob the defendant of his drug proceeds and, if deemed necessary, to kill him in the process. Finally, the SOI told her that defendant stored weapons at both locations.

Given Zirkle's training in narcotics cases and over 17 years of law enforcement experience, she knew that drug traffickers commonly store drugs, drug paraphernalia, money and firearms at the places they reside. Zirkle observed defendant travel between the two locations in the same timeframe that the package containing cocaine was intercepted on its way to the Sanford residence.

The constitutional standard for probable cause turns on whether the facts presented in the affidavit establish a "fair probability" that a search of the premises will yield evidence of criminal activity. *Gates*, 462 U.S. at 244, n. 13. The fact that the name on the package was not disclosed in the affidavit is not material where the package was addressed to defendant's

alleged stash house. Looking at the totality of the circumstances provided in the affidavits, the magistrate had sufficient information to make a finding of probable cause that a search of the two locations would provide evidence of drug trafficking.

C. <u>Particularity Requirement - Firearms</u>

Other than stating an intention to move to suppress the firearms seized under the search warrant as obtained in violation of the Fourth Amendment's particularity requirement, defendant does not make any argument in his brief on this issue.

A constitutionally sufficient search warrant requires that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *Stanford v. Texas*, 379 U.S. 476, 485-86 (1965). The particularity requirement "encompasses two separate concerns – whether the warrant supplies adequate information to guide officers in selecting what items to seize, and whether the category of items specified in the warrant is too broad because it includes articles that should not be seized." *United States v. Evers*, 669 F.3d 645, 651-52 (6th Cir. 2012).

SA Zirkle addressed the particularity requirement concerning firearms by stating in her affidavits that she knew "drug traffickers sometimes

maintain weapons in their residences and locations utilized in furtherance of drug trafficking in order to safeguard their drugs and drug proceeds." ¶ 2. Zirkle referenced information from the SOI that defendant had "two out of three" firearms stolen on one occasion. The SOI also indicated that defendant stores weapons at both locations. ¶ 11. The warrant sought to seize "guns and ammunition."

The warrant included adequate information to guide officers in selecting what items to seize. In addition, the officers executing the warrant knew defendant was a convicted felon. Therefore, once they saw firearms on the premises, they would have been authorized to seize them under the plain view exception. *United States v. Blair*, 214 F.3d 690, 698 (6th Cir. 2000).

The seizure of the firearms did not violate the Fourth Amendment's particularity requirement.

III. <u>Good Faith Exception</u>

In the event the affidavits in this case are found not to establish probable cause, the exclusionary rule does not apply where the law enforcement officers executing the search warrant acted in good faith in relying on the search warrant. *United States v. Leon*, 468 U.S. 897, 922 (6th Cir. 1984). The *Leon* case describes four situations where an officer's

reliance on an invalid warrant cannot be considered objectively reasonable:

> (1) When the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia or probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Id.* at 914-15.

The evidence suggests that Agent Zirkle acted expeditiously to obtain warrants when she was given information about a pending armed robbery of drug proceeds and a possible murder. Reviewing courts are instructed to apply a balancing test, weighing the benefits of deterring a Fourth Amendment violation against the costs of suppressing evidence. *See United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010) (citing *Herring v. United States*, 129 S. Ct. 695, 700 (2009)).

Defendant focuses on the fact that Zirkle omitted the name of the addressee in the affidavit and stated that the cocaine was "destined for CALHOUN" at the target location. As discussed above, to the extent this is misleading, it is not materially so. Zirkle had probable cause to believe that drugs, paraphernalia, drug proceeds and weapons would be found at the addresses for which the search warrants were sought. Under the

circumstances, a reasonable law enforcement officer would not be expected to know that the search in question was illegal despite the issuance of a search warrant.

The court concludes that even if the affidavits fail to establish probable cause, the evidence should not be suppressed under the *Leon* good faith exception and the *Herring* balancing test.

IT IS HEREBY ORDERED that defendant's amended motion to suppress evidence is DENIED.

IT IS SO ORDERED.

Dated: July 25, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 25, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk